**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**UNITED STATES OF AMERICA,**

**v.**                                    **Criminal No.: 2:19cr00186**

**JOSHUA RAY HATFIELD,**

                    **Defendant.**

## POSITION OF THE DEFENDANT ON SENTENCING

COMES NOW the Defendant, Joshua Ray Hatfield, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as this Court's Sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-sentence Report and sets forth the following as his position on sentencing:

## OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Hatfield, through counsel, has previously offered the following objection to the Pre-sentence Report, which remains unresolved.  The Court should note that this objection potentially affects the sentencing guidelines calculation.

1.      Mr. Hatfield objects to the five-level enhancement pursuant to USSG § 4B1.5(b)(1), which is set forth in Paragraph 41.  Mr. Hatfield asserts that he did not engage in a pattern of activity involving prohibited sexual conduct as defined by Application Note 4(B).  All contact involving this minor took place during the course of one single trip on May 4 to May 6, 2019. Accordingly, this enhancement should not apply and his guidelines ranges should be reduced to reflect this change.

1

## SECTION 3553 FACTORS

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).  With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United State*s, 128 S. Ct. 586, 597 (2007), *see also*, *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

As mandated by Congress, the fundamental principle of sentencing is that a court "*shall impose a sentence sufficient, but not greater than necessary*" to meet specified sentencing goals, including the goal of just punishment.  18 U.S.C. § 3553.  In determining the minimally sufficient sentence, §3553 directs sentencing courts to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of Mr. Hatfield;

(2)     the need for the sentence imposed;

(A)     to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of Mr. Hatfield; and

(D)     to provide Mr. Hatfield with needed educational or vocational

training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentences and the sentencing range established for [the

offense];

(5)     any pertinent policy issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553.

In addition, a district court "may not presume that the Guidelines range is

reasonable," and instead "must make an individualized assessment based on the facts

presented." *Gall*, 128 S. Ct. at 597.  Moreover, the Supreme Court has specifically ruled

that, in balancing the §3553(a) factors, a judge may determine that, "in the particular

case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of

sentencing." *Kimbrough*, 128 S. Ct. at 564. *See Rita v. United States*, 127 S. Ct. 2456,

2465 (2007) (a district court may consider arguments that "the Guidelines sentence

3

itself fails properly to reflect §3553(a) considerations, or [that] the case warrants a different sentence regardless.")

Other statutes also give the district court direction in sentencing.  For instance, under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation (emphasis added).  In sum, in every case, a sentencing court must consider *all* of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

### Introduction

This offense represents Mr. Hatfield's first significant contact with the criminal justice system.  It is an aberration for a young man who has otherwise led a life immersed in faith and charity.  The numerous letters submitted to the Court uniformly describe a young man who is kind, humble, respectful, and easygoing.  They depict a young man who is anything but a predator.  As the arguments below bear out, the sentencing range currently set forth in the Pre-sentence Report is far in excess of what is just and necessary.  Instead, a sentence of 60 months, coupled with probation and mandatory counseling, provides for a just punishment that is sufficient, but not greater than necessary, to fulfill the goals of § 3553.

## Nature and Circumstances of the Offense

Mr. Hatfield pleaded guilty to one count of Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b).  The facts and circumstances of this offense are fully set forth in the Pre-sentence Report, and Mr. Hatfield agrees that they are accurate.  There are, however, numerous factors which the Court should consider in mitigation Mr. Hatfield's sentence.

It is important for the Court to understand that Mr. Hatfield's age does not correspond to his emotional or intellectual maturity.  Mr. Hatfield's uncle, Dr. Daniel Akers, opines that in his professional opinion, Mr. Hatfield operates at the level of a 15-year-old. (Letter of Dr. Daniel Akers, May 20, 2020 at 1)  Dr. Akers explains that trauma during Mr. Hatfield's birth caused a "significant anoxic brain injury" that in turn resulted in "significant mental impairment".  *Id.*  Mr. Hatfield's mother, who knows her son probably better than anyone, describes the difficulties and struggles that Mr. Hatfield had in school and how hard he had to work just to attain B's and C's.  (Letter of Paula Chandler, Jun. 24, 2020 at 1-2)  Ms. Chandler also describes Mr. Hatfield's impulsiveness and his apparent inability to recognize and understand the consequences of his actions. *Id.*

While Mr. Hatfield's actions were irresponsible and misguided, he wants the Court to know that he had no real criminal intent in his heart.  Mr. Hatfield certainly did not appreciate the gravity of his actions, nor did he take the time to really consider the risks to his freedom and the consequences that his actions would have on L.W. or her family.

5

In truth, Mr. Hatfield felt he was in a real relationship with L.W.  Mr. Hatfield met L.W. in an online forum during a period in his life when he was emotionally at his lowest and seeking companionship.  His only serious relationship had fizzled a few years earlier when his fiancée called of their engagement and Mr. Hatfield's life was just sort of stalled.  He and L.W. began to chat online in February 2018 and they hit it off immediately. Things were not going well in his personal life otherwise and he turned to L.W. for solace. This was especially true after Mr. Hatfield's sister's death by suicide in June 2018.  Mr. Hatfield had been very close with his sister and her tragic death shattered him.

L.W. was a bright spot in Mr. Hatfield's life.  The pair corresponded and chatted online for over a year before Mr. Hatfield travelled to England to meet her face-to-face. To him, this was a real relationship; she was his girlfriend and he was her boyfriend. This is very apparent from the long length of time the two communicated—both before and after their meeting.  Mr. Hatfield did not cease talking to L.W. after he came back to the United States.  They kept talking and making plans for the future right up to the time of his arrest in October 2019.  These are not the actions of a predator, rather they are the actions of a misguided young man who truly cared about L.W.

It is obvious that she also felt the same way.  L.W.'s characterizations and her opinion on her and Mr. Hatfield's relationship are evident from the materials that have been submitted to the Court.  L.W. certainly did not feel groomed or pressured or taken advantage of in any way.  She still believes she and Mr. Hatfield were in a relationship.

To be clear, Mr. Hatfield is not attempting to avoid accountability for his conduct. He knows now that he never should have done these things and that this relationship was not healthy for either party.  Mr Hatfield has been in counseling at Peninsula Therapy Center since December 2019.  That treatment has benefited him tremendously and has allowed him to view this situation in a much more mature manner.  Through his counseling, Mr. Hatfield now has the insight and capacity to more fully appreciate why this relationship was harmful and he has a vastly different perspective about it now.  He recognizes that he was wrong, that this never should have happened, and that it will never happen again.

Mr. Hatfield takes full responsibility for his actions and accepts whatever punishment the Court deems just.  He has pleaded guilty to a federal felony sex offense.  This will follow him for the rest of his life.   That alone is a significant punishment, which along with the circumstances of this offense, weighs heavily in favor of mitigation and Mr. Hatfield asks that the Court give these factors great weight in fashioning an appropriate and just sentence.

**<u>History and Characteristics of Mr. Hatfield</u>**

Mr. Hatfield was raised in a stable, two-parent home and has never suffered from any form of abuse.  He has a very close relationship with his family and they all remain supportive of him and ready to assist him in any way necessary to help him make a successful transition back into the community.

Mr. Hatfield is only 23-years-old and has never been in any serious trouble; his only prior offense was a misdemeanor paraphernalia charge that was ultimately

dismissed.  Mr. Hatfield recognizes that he is facing a long prison sentence.  He respects this Court and he respects the law.  Mr. Hatfield regrets the tremendous burden his actions have placed on his family.   He does not seek to place blame on anyone else for what he did and Mr. Hatfield sincerely regrets the choices and actions that now bring him before this Court.  He implores the Court to consider that such a sentence is not necessary to deter him from future misconduct, nor is such a sentence necessary to rehabilitate him.

The family and friends who know Mr. Hatfield best know that although his conduct was regrettable, it was not in line with his true character. This Court has the benefit of many of letters written on Mr. Hatfield's behalf, which paint for the Court a complete picture of his true character; that of a selfless, resilient, kind, caring, and respectful person.

Mr. Hatfield was raised in a loving family and his parents strove to instill in Mr. Hatfield and his siblings importance of religion, of service to the community, and of hard work.  The Court can see that he has always exemplified these ideals.  Mr. Hatfield's dedication to his faith and devotion to the calling to serve his fellow man are unassailable.  He has always placed the needs of others above his own.

This Court may, and should, weigh heavily Mr. Hatfield's history of service and his generous and compassionate nature when fashioning his sentence.  *See United States v. Rita*, 551 U.S.  338, 365 (2007) (Stevens, J., concurring) (noting that the sentencing court may properly consider service to the public in fashioning its sentence pursuant to the §3553(a) factors); *United States v. Cooper*, 394 F.3d 172, 178 (3d Cir.

8

2005) (noting that a downward departure may be appropriate if a defendant has demonstrated a history of exceptional good works in the community), *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006) (noting defendant's good deeds, generosity, and acts of compassion).  Moreover, the Court may impose a below guidelines sentence where the defendant's conduct falls outside of his life and character as a whole.  *See*, *United States v. Benkahla*, 501 F. Supp. 2d 748, 761 (E.D. Va. 2007) (holding that defendant's "significant number of strong, positive relationships with friends, family, and the community" as wells as numerous letters "attesting to his honor, integrity, moral character, opposition to extremism, and devotion to civic duty" are all factors that weigh heavily in favor of a below-guidelines sentence).

Taken as a whole, Mr. Hatfield's history and characteristics—his strong family ties, his exceptional moral and ethical standards, civic-mindedness, and compassionate and generous nature— as well as his cooperation, acceptance of responsibility, and remorsefulness certainly compel a below-guidelines sentence.

### The Need for the Sentence Imposed to Reflect the Seriousness of the Offense  Promote Respect for the Law, to Provide Just Punishment and to Afford Adequate Deterrence to Criminal Conduct

Mr. Hatfield understands the seriousness of this offense and the harm that resulted from his serious lapse of judgment.  While the Court must endeavor to fashion a sentence that provides for appropriate punishment as well as adequate deterrence, there is no need to incarcerate Mr. Hatfield for a substantial period of time in order to achieve those ends.  In this case, the felony conviction itself, with all of its attending

disadvantages, along with the publicity surrounding this investigation and sentencing, provide a substantial punishment and more than ample deterrence.

Mr. Hatfield is now a convicted felon and sex offender.  Mr. Hatfield will always carry with him the stigmas of his status.  Such a conviction will forever hinder his personal life, his professional life, and his standing in the community.  From where he permitted to live and work to the people with whom he is permitted to associate, Mr. Hatfield will always suffer the consequences of his actions.

While such effects are impossible to quantify specifically, they are undoubtedly substantial.  Likewise the shame and embarrassment he has suffered and will continue to suffer is significant and should not be discounted.  *See*, *United States v. Anderson*, 533 F.3d 623, 633 (8th Cir. 2008) (holding that the district court, in fashioning a below-guidelines sentence, properly considered a number of "atypical" punishments defendant suffered including loss of his reputation and business).

The felony conviction also affords significant deterrence from future criminal conduct.   Of course, while the Court has a duty to impose a sentence that provides for adequate deterrence to criminal conduct, it is not necessary, nor is the Court required, to impose a lengthy period of incarceration to achieve that goal.   *See*, *United States v. Edwards*, 595 F.3d 1001, 1016 (9th Cir. 2010) (noting that §3553 does not require that the goal of general deterrence be met through a period of incarceration and upholding district court's sentence of probation and restitution despite a guidelines range of 27-33 months and despite the fact that defendant had a felony record for a similar offense).

10

In a similar vein, the Court must seek to impose a sentence that will protect the public from future crimes by Mr. Hatfield.  Unquestionably, there is no need to impose a long prison sentence to achieve that end.  Mr. Hatfield presents few of the factors that signify a risk of recidivism.  He has no previous criminal convictions and his only prior brush with the law involved a now-dismissed drug paraphernalia charge relating to marijuana.

Mr. Hatfield has had some prior issues with marijuana use and alcohol abuse but is certainly amenable to treatment.  Mr. Hatfield also has a strong family and social support system consisting of scores of people who stand ready to assist him in any way needed during this difficult period.  Most importantly, Mr. Hatfield has learned from his mistakes and he has demonstrated significant remorse and acceptance of responsibility.

All these factors signify that there is virtually no likelihood that Mr. Hatfield will reoffend or violate any of the terms the Court imposes upon him.  Furthermore, these factors, along with Mr. Hatfield's characteristics and background also confirm that minimal sentence of incarceration followed by a period of supervised release is a just punishment and is more than sufficient to deter future unlawful conduct.

Additionally, the Court must be cognizant of the fact that Mr. Hatfield is likely to face a number of collateral consequences during his term of incarceration that will render his term more severe than other non-violent, first-time offenders.  Specifically, Mr. Hatfield may be ineligible for designation to a minimum security facility and may not be eligible for programs and opportunities that are typically available to other non-violent

11

offenders.  Furthermore, he may not be eligible to serve the last portion of his sentence

in any type of community confinement, including RRC or home detention.  In addition, at

the conclusion of his prison sentence Mr. Hatfield may be required to undergo a sex

offender evaluation to determine if he needs to be civilly committed.

     Due to the nature of the offense, the Federal Bureau of Prisons officials will

assign a "Sex Offender" Public Safety Factor (PSF), regardless of any mitigating or

aggravating circumstances, to any defendant convicted of sex-related offenses. See

BOP Policy Statement 5100.08 "Inmate Security Designation and Custody

Classification", Chapter 5, Pages 7-8 (September 12, 2006).  This policy statement

states that the Sex Offender PSF should be applied, among other things, for " [a]ny

sexual contact with a minor"  *Id.* at 8.   The consequences that result from the

application of this PSF will negatively impact Mr. Hatfield at all stages of his sentence.

BOP Policy Statement 5100.08 states that inmates with a Sex Offender PSF "will be

housed in at least a Low security level institution, unless the PSF has been waived."  *Id.*

Thus, Mr. Hatfield will likely not be eligible to serve his sentence in a Minimum security

facility even though he is a non-violent offender.

     It is important to understand the significant differences between Minimum and

Low Security institutions. Minimum security institutions typically incarcerate first-time

offenders and have dormitory-style housing, a relatively low staff-to-inmate ratio, house

only nonviolent offenders, and have no fences.  These institutions are work and

program oriented. Low security institutions have double-fenced perimeters, more strict

regulations regarding movement, and more restrictive visiting requirements.  The staff-

to-inmate ratio of higher security institutions is greater than in minimum-security facilities. The rate of assault, fighting, threatening bodily harm and other prohibited acts is also more common in a low security institution than a minimum security camp.

Finally, application of the Sex Offender PSF will negatively impact Mr. Hatfield as he prepares to be released from prison. Because of the nature of his offense, Mr. Hatfield may be subject to an evaluation conducted by the Federal Bureau of Prisons to determine if he is "sexually dangerous" and therefore should be civilly committed upon completion of his sentence.

Mr. Hatfield respectfully requests that the Court take all of these factors into consideration when determining an appropriate sentence of incarceration.

### The Need to Provide Mr. Hatfield with Educational or Vocational Training, Medical Care, or Other Correctional Treatment

Mr. Hatfield fully intends to make the best use of his time while incarcerated in an effort to make the transition back into the community as seamless as possible.  He would like to take advantage of all of the vocational and educational programs that are open to him. Although, as noted above, such opportunities are likely to be limited.

Mr. Hatfield is asking the Court to recommend that he have opportunity to engage in treatment for substance abuse.  In addition, it is evident that Mr. Hatfield needs to continue with his psychological counseling in order to address the death of his beloved sister, among other issues.  Accordingly, he is also asking for the opportunity to be able to continue with his mental health treatment and requests that the Court make a recommendation that such treatment be made available to him during his incarceration.

13

Mr. Hatfield also welcomes the treatment and counseling for sex offenders that he will receive while incarcerated. To this end, Mr. Hatfield is asking that the Court recommend that he be considered for admission into the Bureau of Prisons Sex Offender Management Program at FCI Petersburg. FCI Petersburg is a medium-security facility that is a designated sex offender institution. At FCI Petersburg, Mr. Hatfield will have access to the programs that will be most beneficial and appropriate to address his needs and to ensure a successful transition upon release. This placement will have the added benefit of allowing Mr. Hatfield to remain close to his family and support system.

Mr. Hatfield also understands the he will be required to continue such treatment and counseling upon his release from incarceration regardless of the length of his sentence. He welcomes that opportunity as well and looks forward to demonstrating to the Court that he is sincere in his desire for treatment.

It is apparent, taking all of these factors into consideration, that the advisory guidelines range in this case is grossly excessive, and that a sentence of 60 months incarceration is more than sufficient in this case.

### The Sentencing Range Established for the Offense

The Pre-sentence Report sets forth a total offense level of 30 and criminal history category of I. The resulting guideline range is 97 to 121 months, which is exceptionally high given the circumstances of the offense. If the Court sustains Mr. Hatfield's objections to the guidelines, the resulting guideline range would be 57 to 71 months (representing a total offense level of 25 and criminal history category I).

14

Even this reduced range is greater than necessary to meet the mandates of § 3553.  It is not necessary to punish harshly to promote respect for the law.  In this case, a sentence of imprisonment in the range of 97 to 121 months will serve no one— not society, and certainly not Mr. Hatfield.  In all likelihood such a sentence would have the opposite effect.  *See*, *Gall v. United States*, 552 U.S. 38, 54 (2007)  (recognizing that a sentence of imprisonment may also serve to "promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances" of the case).

The Court must consider that the guidelines range advocated by the government and the probation department in this case is extensively driven by enhancements to the base offense level of 24.  First, Mr. Hatfield is assessed two points for using a computer or computer service.  In today's world, this is simply how people, especially young people, communicate.  Guidelines enhancements are typically promulgated with the idea that certain conduct is particularly egregious or outside the norm and thus warrants increased punishment.  Perhaps, at one time, using an electronic device to communicate was such a circumstance.  Obviously, that is no longer the case. Much like computer-based enhancements in child pornography cases, this enhancement is clearly outmoded and no longer serves any rational purpose because it utterly fails to distinguish among defendants on the basis of their degree of culpability.

Mr. Hatfield is also assessed two points for sexual contact with a minor.  He has fully admitted this and has no quarrel with this enhancement.  However, he is also assessed with a 5-point "repeat" sex offender enhancement for the same conduct.  As

15

noted above, Mr. Hatfield met L.W. in person one time—the single occasion when he travelled to her family's home in England.  According to Mr. Hatfield's statement, they had sex two times during this one visit.  As a result, Mr. Hatfield's guidelines are increased by 40 to 50 months, or approximately 70 percent (57 to 71 months increased to 97 to 121 months).   Even if this enhancement is technically correctly applied because the two had sex more than once during this visit, the Court must consider whether such a significant enhancement is just in light of the actual circumstances. The Court must also consider that the only evidence that confirms the two had sex more than once came from Mr. Hatfield's own statements, which he gave freely in an effort to cooperate with authorities.

Stringent application of the guidelines under such circumstances, even if they are strictly correct, places far too much emphasis on numbers and devalues the actual circumstances of the case and the individual defendant.  In addition, such an approach unduly minimizes the weight given to all of the § 3553 factors that the Court is bound to consider.

For these reasons, Mr. Hatfield asks that the Court fashion a sentence of 60 months incarceration. This period of incarceration should also be followed by a term of supervised release and continued sex-offender treatment.

## CONCLUSION

For the reasons set forth above, the Defendant, Joshua Ray Hatfield, by counsel respectfully submits that a sentence of 60 months will accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553.

16

Respectfully submitted,

JOSHUA RAY HATFIELD
By Counsel

_____/s/_____

James O. Broccoletti, Esquire
VSB# 17869
Counsel for JOSHUA RAY HATFIELD
ZOBY, BROCCOLETTI & NORMILE, P.C.
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Elizabeth M. Yusi, Esquire
Assistant U. S. Attorney
*Office of the United States Attorney*
101 West Main Street, Suite 8000
Norfolk, VA 23510

_____/s/_____

James O. Broccoletti, Esquire
VSB# 17869
Counsel for JOSHUA RAY HATFIELD
ZOBY, BROCCOLETTI & NORMILE, P.C.
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com

I hereby certify that on the 23rd day of July, 2020, I caused a true and correct copy of the foregoing Motion to be mailed to the following non-filing user:

Tara R. Gill
U.S. Probation Officer

17

827 Diligence Drive, Suite 210
Newport News, VA 23606

_____/s/_____

James O. Broccoletti, Esquire
VSB# 17869
Counsel for JOSHUA RAY HATFIELD
ZOBY, BROCCOLETTI & NORMILE, P.C.
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com